[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties intermarried on June 1, 1968 at Stamford, Connecticut. They have lived continuously in this state since 1969. There are three minor children issue of the marriage. Heather Sclafani born February 25, 1975; Brooke Sclafani born March 1, 1976 and Jennifer Sclafani born October 21, 1981.
The evidence presented at trial has clearly established the allegation that the marriage has irretrievably broken down. Judgment may enter on the complaint dissolving the marriage on that ground.
The court has carefully considered the criteria set forth in 46b-56, 46b-81, 46b-82 and 46b-84 of the Connecticut General Statutes in reaching the decisions reflected in the orders that follow.
This is a marriage of some 20 years. The plaintiff, aged 43 is in reasonably good health, except for as asthma condition. The plaintiff was gainfully employed while her husband finished school and during his military service. Upon the birth of their first child, the plaintiff remained at home and assumed the tractional role of homemaker. The plaintiff, however, was supportive of the defendant's endeavors in his family business a wholesale food distributor of specialty products. The plaintiff assisted the defendant in the evenings with his book work, payroll and orders. In 1978, the plaintiff placed her 2 young children in nursery school and went to work in the defendant's family business. The plaintiff compiled a 90 page catalogue for the business and in addition, assisted her mother-in-law with her correspondence and bookkeeping. The plaintiff continued to work after the birth of their third child in 1981 leaving work to return home and nurse her baby on a daily basis. The plaintiff has three difficult pregnancies. The plaintiff has no savings and no funds of her own. The defendant kept a tight reign on the purse strings as the plaintiff had no access to the drawing account. However, the credit cards were charged to the limit. The defendant also kept a tight reign on certain of the plaintiff's activities. The parties apparently had very little social life. Throughout the marriage the plaintiff was a hard worker and a devoted mother. CT Page 4225
The defendant who is 44 years of age characterized himself as a workaholic. He devoted himself to his family's wholesale business which had been started in 1911. This business has grown and prospered through the years and presently supports the defendant, his brothers and their father. The business had gross sales of approximately $8.7 million dollars for the year 1989 and gross profits of approximately $1.2 million for the year 1989. The defendant's father is in charge of the business but because of his advancing age and health. The defendant along with his brother, has assumed much of the day to day burdens in the operation of this business. The defendant indicated he is second in command.
Each party presented expert testimony as to the value of Gus Sclafani Corporation. The two trust instruments involving the defendant were also placed into evidence.
The defendant suffered a heart attack — stress attack sometime in 1985 and thereafter made attempts to reduce his working hours and devote more time to his family. The plaintiff had terminated her working at the business sometime in 1984 to devote more time to her family. The plaintiff became involved in the "Babe Ruth League" with their 3 minor children and was absorbed in managing her home and her family.
Unfortunately, sometime in 1987 the plaintiff became involved in an interracial relationship. Both the plaintiff and the defendant became involved in intensive counseling to resolve their marital difficulties. The defendant reduced his work schedule and made serious efforts to heal the breach that developed between he and his wife — including a Bahama vacation and a leased Mercedes motor vehicle, (both after the institution of this dissolution).
The plaintiff alleged that the defendant had a violent temper, which manifested itself during an altercation at the home in the Spring of 1988. The plaintiff instituted this dissolution action shortly after this incident. The defendant vacated the home for a period of time but, during the next several months he moved in and out of the marital home, as the parties continued to try to resolve their marital difficulties. The court found the defendant to be a decent, hard working individual who devoted himself to his family's wholesale business, perhaps to the detriment of his marriage. His efforts to maintain the marriage relationship apparently came too little and too late. The plaintiff, for whatever reason, felt lonely and unloved and looked outside her home for something more. It is unfortunate that the substantial amount of counseling was unable to assist the plaintiff during the times of her needs and CT Page 4226 thus, channel and motivate her towards her marital obligations.
The court does not condone the physical violence inflicted on the plaintiff by the defendant. The problems in the marriage as testified to by the plaintiff, do not appear to have been insurmountable. Perhaps with more effort by the plaintiff and an earlier realization by the defendant, the parties could have taken a different path toward the resolution of their marital problems. Unfortunately, we are not gifted with hindsight. Both parties were visibly upset during the course of their testimony.
It is difficult to determine whether the marriage had broken down irretrievably sometime prior to the spring of 1988, or whether the plaintiff's involvement with another led to the final breakdown. The plaintiff felt their marriage was in trouble in 1985 and had broken down in 1987. The plaintiff had consulted an attorney in 1987, however, she wavered and did not institute her suit until May 1988, shortly after the altercation. The defendant felt the marriage had not irretrievably broken down until October 1989. As indicated, the defendant made valiant but in vain efforts to hold the marriage together during the ensuing months after May 1988. The defendant claims his efforts at reconciliation were thwarted by the plaintiff's continued involvement with another.
Unfortunately, the parties were unable to resolve their marital difficulties and both parties must accept some responsibility for the irretrievable breakdown of their relationship.
The defendant is a 13% owner of Gus Sclafani corporation; which includes his three brothers and his father. The defendant pegged his income in the $100,000 range and indicated he has no reason to doubt that his income would continue in this range. The defendant's 1989 tax return indicates a gross income of approximately $147,000, with a net income of $112,000 to $115,000 for the year 1989. The defendant's financial affidavit indicates a net of approximately $92,000 per year. This figure includes a yearly bonus which the defendant has traditionally received. The defendant's father makes the final determination as to the amount of bonuses. The defendant also has income of $200 per week which comes from the company's cash drawer account.
Prior to the institution of this dissolution, the defendant had a drawing account in the approximate amount of $199,000. The plaintiff had no access to this account. The drawing account has been in existence for some time and increased each year up to 1988. In addition, the defendant had CT Page 4227 IRA's of approximately $43,000 prior to the institution of this dissolution. The defendant has engaged in a course of systematically depleting this drawing account such that, at the time of trial, it contained approximately $800. No sums were added to this account as they had been in prior years.
The defendant's IRA's, approximately $43,000, were depleted shortly before the commencement of this trial. The plaintiff wife has no liquid assets of her own. During the marriage the plaintiff had access to the credit cards and these cards have been charged to the limit. During their marriage, the parties were able to barter services, such as fuel and landscaping, for goods from the business. The plaintiff's only asset is her joint interest in the marital home.
The plaintiff is presently employed, having returned to work in March 1990. She earns a net of $1,549 per month and averages 30 hours per week. She does not get paid if she is out of work due to health or family reasons.
The defendant has an ability to acquire future capital assets and income far and above the plaintiff's ability to do so.
The defendant has depleted the cash assets of this marriage, over which he had sole control — the drawing account $199,000 and the IRA's of $43,000. The remaining major assets of the marriage are the marital home and the defendant's interest in the family business.
The court has carefully considered all the statutory criteria set forth in 46b-81 and 46b-82 as well as 46b-84, as well as the financial affidavits of the parties and the testimony and evidence presented, in reaching the decisions s reflected in the orders that follow.
Custody — Visitation
1. At the start of trial, the parties placed an oral stipulation in the record which was approved and entered as an order, with respect to custody and visitation. The parties agreed to joint legal custody with physical possession to be with the plaintiff. A liberal, reasonable, and flexible visitation schedule was also placed on the record, approved and entered as an order by the court.
2. The attorney for the minor child raised some concerns over future visitation. All parties are hopeful that upon conclusion of this trial, the parties will attempt to normalize their relationship with the minor children. The attorney for CT Page 4228 the minor children indicated that future counseling for the minor children may be and is appropriate.
3. Any problems with respect to visitation are referred to the Family Services Unit for mediation. Family services I shall monitor the visitation for 6 months from the date hereof. In the event the matter cannot be resolved through such mediation, the parties shall return to court for a further hearing and orders thereon.
Real Estate
1. The marital home at 27 Hedge Brook Lane, Stamford, Connecticut is jointly owned. It has a fair market value of approximately $520,000. The home is subject to a first mortgage of approximately $60,000. There's testimony presented that the septic sewer requires repair estimated to cost approximately $25,000.
2. It is ordered that the defendant shall transfer his interest in said real estate to the plaintiff. The defendant shall be responsible for the mortgage and taxes payment through November 30, 1990. Thereafter the plaintiff shall be responsible for the mortgage payments and shall save the defendant harmless therefrom.
3. All house expenses including utilities shall be paid by the defendant through November 30, 1990. Any arrears, if any, shall be brought current through November 30, 1990.
4. The plaintiff shall be responsible for any septic sewer repairs in connection with the marital home.
Alimony/Child Support
1. Commencing December 1, 1990, the defendant during his lifetime, shall pay to the plaintiff as unallocated alimony and support the sum of $3,500 per month through December 31, 1994.
Thereafter, the defendant shall pay to the plaintiff as unallocated alimony and support the sum of $2,700 per month through December 31, 2000.
2. The unallocated order of alimony and support as set forth above shall terminate upon the death of the plaintiff, the death of the defendant, or the remarriage of the plaintiff or December 31, 2000, whichever event shall first occur.
3. In the event alimony shall terminate as set forth above, while any of the three children are minors, the parties CT Page 4229 shall return to court for an appropriate order for child support.
4. The defendant shall be responsible for tuitions and school expenses, if any, for the minor children.
Personal Property
1. Motor Vehicle:
At the defendant's option, the defendant shall either: (1) continue and be responsible for the lease payments on the Mercedes Benz motor vehicle, presently used by the plaintiff. At the conclusion of the lease term, the plaintiff shall have the option of purchasing the motor vehicle from the leasing company at her expense or, (2) the defendant shall provide the plaintiff with a new motor vehicle, of the plaintiff's choice, and with title to be placed in the name of the plaintiff, in an amount not to exceed $20,000.
The defendant defendant shall make the election within 30 days of date. In the event the defendant chooses the second alternative above, he shall be responsible for the lease payments on the Mercedes motor vehicle until such time as another motor vehicle is provided for the plaintiff.
2. The plaintiff shall be entitled to the household furniture and furnishings contained in the marital home.
3. The defendant shall be entitled to the household furniture and furnishings contained in the condo.
4. The plaintiff shall be entitled to her jewelry and personal effects.
5. Each party shall retain and be entitled to any other items of personal property presently in their possession if not otherwise disposed of in this memorandum.
Medical Coverage
1. The defendant shall provide medical, dental, hospital and orthodontia coverage for the benefit of the minor children. The defendant shall be responsible for all reasonable and necessary unreimbursed medical, dental, orthodontia, psychiatric and psychological therapy expenses, provided that no expense except for an emergency shall be incurred without the knowledge the defendant. The use of therapy and counseling for the minor children shall be used only as the needs of the minor children require and dictate. CT Page 4230
Liabilities
1. The defendant shall be responsible for and shall hold the plaintiff harmless from all the liabilities as listed on his November 5, 1990 affidavit including the bills of Laurel Hill Landscape Services, Inc. and Walter M. Jakubowski, engineer, as well as the credit card debts as itemized on defendant's Exhibit 6, in the approximate amount of $20,331.40.
2. The defendant shall be responsible for any outstanding psychiatric, medical, dental or therapy and/or psychology bills, incurred by the plaintiff and minor children as of December 1, 1990.
3. The defendant shall hold the plaintiff harmless from any and all liability arising out of the law suit commenced by the Connecticut National Bank against the plaintiff and the defendant.
4. The defendant shall be responsible for the protective alarm system payments through November 30, 1990.
5. Except as set forth in this memorandum, the defendant shall be responsible for any outstanding utility bills in connection with the marital home through November 30, 1990, including the cablevision bill, Ho Con gas, and the SNET company bill up to $75 per month.
6. The plaintiff shall be responsible for the outstanding bills of Peter and John Reiss and Stolfi's Service Corp.
Life Insurance
The defendant shall provide and maintain a life insurance policy on his life in the amount of $300,000 (Three Hundred Thousand Dollars) for the benefit of the plaintiff and minor children for so long as the defendant has an obligation for unallocated alimony and/or child support payments. This provision shall be modifiable.
Income Tax
The parties shall cooperate and file a joint 1989 income tax return. The defendant shall indemnify and hold the plaintiff harmless from any and all liability, penalties, or interest in connection with the filing of said returns. The defendant shall be responsible for any accounting fees in connection with said return. CT Page 4231
Miscellaneous
The defendant shall be entitled to his minority interest in Gus Sclafani, Inc. and the family real estate trusts, free from any claims of the plaintiff. The defendant shall be entitled to any assets in his possession as listed on his financial affidavit, not otherwise disposed of herein, including his interest in the family real estate trusts.
Counsel Fees
1. The defendant shall pay to the plaintiff as a contribution towards her attorney's fees the sum of $10,000.
2. The defendant shall be responsible for the attorney fees for the attorney or the minor child in the amount or $1,890.
Change of Name
The plaintiff is granted a change of name to Lynn Miller.
An immediate withholding is ordered as provided by statute.
COPPETO, J.